## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
Fort Worth Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>THE BOEING COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  4:21-cr-00005-O<br>)<br>)<br>)<br>)<br>) |

## GOVERNMENT STATUS REPORT AND
## CONSENT MOTION TO CONTINUE THE MOTIONS *IN LIMINE* DEADLINE

The United States of America (the "Government") respectfully submits this status report to inform the Court that the Government and The Boeing Company ("Boeing" or the "Company") have reached an agreement in principle on the terms of a non-prosecution agreement ("NPA" or the "Agreement"). The parties are proceeding expeditiously to memorialize the terms into a written agreement. After the Agreement is finalized and signed, the Government will promptly file, with Boeing's consent, a motion to dismiss without prejudice the pending Criminal Information,[1] pursuant to Federal Rule of Criminal Procedure 48(a). The Government anticipates filing the motion by no later than the end of next week, and will include with it the Agreement.

Before deciding to enter into the Agreement, the Government held a conferral session on May 16, 2025, for the families of the victims of the Lion Air Flight 610 and Ethiopian Airlines Flight 302 airplane crashes ("Families") and their counsel (the "May 16th Conferral").[2] More than

---

[1] Criminal Information, ECF No. 1 (January 7, 2021).

[2] Government Status Report, at 1-2, ECF No. 308 (May 17, 2025).

approximately 90 Family members and counsel participated for at least some portion.[3] On May 19, 2025, at the request of an attorney representing approximately 60 Family members who could not attend on May 16th, the Government held a separate conferral with him (the "May 19th Conferral").

The Government explained during the conferrals that following the Court's December 5, 2024 decision rejecting the proposed plea agreement,[4] and after conferring with the Families and their counsel on December 11, 2024,[5] the Government decided to pursue another potential pre-trial resolution. The parties thereafter engaged on a range of possible resolutions, and on May 12, 2025, those discussions resulted in a potential framework—but not an offer by the Government—to resolve this case through an NPA. The very next day, the Government invited the Families and their counsel to the May 16th Conferral to inform them of the potential NPA resolution with the Company and to hear their views.

During the May 16th Conferral, and in follow-up email correspondence, certain Family members and counsel expressed a desire to provide supplemental written submissions to the Government before the Government made its decision whether to resolve this case through an NPA or proceed to trial. The Government agreed that before making its decision, it would consider any written submissions from the Families and/or their counsel that were provided by 5:00 p.m. Eastern

---

[3] The Government invited Boeing's airline entity customers that purchased the 737 MAX airplane ("Airline Entity Customers") to the conferral. None chose to join.

[4] Order Rejecting Proposed Plea Agreement, ECF No. 282 (December 5, 2024).

[5] Government Status Report, at 1-2, ECF No. 284 (January 3, 2025). More than approximately 90 Family members and counsel participated for at least some portion of the December 11th conferral. The Government invited the Airline Entity Customers to the conferral. None chose to join.

Time on May 22, 2025.[6] The Government reviewed and considered the written submissions it received.

The Family members, and counsel on their behalf, of over 110 crash victims advised the Government that they either support the Agreement specifically, support the Department's efforts to resolve the case pre-trial more generally, or do not oppose the Agreement. One Family member, for example, who participated but did not speak in the May 16th Conferral, wrote that he "seek[s] a swift and comprehensive solution to bring closure" and wants the "DOJ to find a way to resolve this matter as soon as possible." This is because, he said, "the grief resurfaces every time this case is discussed in court or other forums." "Despite the potential pros and cons" of negotiations with Boeing, he "entrust[s] the DOJ to expedite the case's conclusion" rather than to continue with court proceedings that "[w]ould take years to resolve." A Family member of another crash victim wrote separately to say that their family has accepted the NPA as an alternative path, noting that "[a]lthough this decision does not lessen the immense pain this tragedy has caused our family, we feel it is in our best interest, spiritually and emotionally, to resolve this matter once and for all and concentrate on healing. We acknowledge the complexities involved, and we agree that completing this agreement will enable us to start the process of closure." And counsel for Families of 49 crash-victims expressed the "reluctant approval of the proposed NPA" by the Families of 47 of those victims, who believe "the NPA provides three real benefits," namely, finality, certainty, and "some meaningful restitution" without further litigation.

Other Family members continue to advocate for the Government to go to trial, consistent with feedback they have shared with the Government and the Court throughout this case. They are opposed to any pre-trial resolution, and some made clear they intend to litigate a motion to dismiss.

---

[6] Government Status Report, at 2, ECF No. 308 (May 17, 2025).

The Government supports their right to be heard, and will confer with them and Boeing on a proposed briefing schedule.

In addition to the feedback from the May 16th and 19th Conferrals and written submissions, the Government also has had the benefit of the conferral on December 11, 2024, after the Court's decision rejecting the proposed plea agreement; the many conferrals and correspondences prior to then,[7] including the May 31, 2024 conferral concerning the paths available to the Government after determining Boeing breached the DPA, during which one of the paths discussed was an NPA;[8] and the litigation over the proposed plea agreement.[9]

After careful consideration of the Families' views, the facts and the law, the Department's *Principles of Federal Prosecution*,[10] and the professional and ethical obligations of prosecutors, it is the Government's judgment that the Agreement is a fair and just resolution that serves the public interest. The Agreement guarantees further accountability and substantial benefits from Boeing immediately, while avoiding the uncertainty and litigation risk presented by proceeding to trial.

Below is an overview of the Agreement's material terms. The Government discussed these material terms with the Families and their counsel during the May 16th and 19th Conferrals. And the Government informed them in writing today, before filing this status report, about the decision to enter into the Agreement, which will have a term of two years.

---

[7] *See generally* Government Declaration ECF No. 245-1 (Aug. 14, 2024).

[8] *Id.*, at 16-21, ¶¶ 37-43; June 4, 2024 P. Cassell letter to Government, at 3, ECF No. 245-22 (responding to the option, among others, of the Government "enter[ing] into a new NPA or new DPA with Boeing").

[9] *See e.g.*, Ryan Motion in Opposition to Proposed Plea Agreement, ECF No. 234.

[10] Justice Manual ("JM") §§ 9-27.000, -28.000, *available at* https://www.justice.gov/jm/title-9-criminal.

• Boeing will admit to conspiracy to obstruct and impede the lawful operation of the Federal Aviation Administration Aircraft Evaluation Group. The Agreement will not provide protection against prosecution for any other misconduct.

• Boeing will pay or invest over $1.1 billion, consisting of: (i) a criminal monetary penalty of $487.2 million, which is the statutory maximum fine, with credit for the $243.6 million penalty the Company previously paid pursuant to the January 7, 2021 deferred prosecution agreement ("DPA");[11] (ii) $444.5 million for another Crash-Victims Beneficiaries Fund, to be divided evenly by crash victim, which is in addition to the $500 million Crash-Victims Beneficiaries Fund that Boeing paid under the DPA;[12] and (iii) $455 million to strengthen the Company's compliance, safety, and quality programs.

• On top of the financial investments in compliance, safety, and quality, Boeing must continue to improve the effectiveness of its anti-fraud compliance and ethics program, and retain an independent compliance consultant empowered to make recommendations for further improvement and required to report its findings directly to the Government. This approach strikes a careful balance between, on the one hand, the continued need to ensure and independently verify that Boeing's program improves, with, on the other hand, the meaningful compliance

[11] Deferred Prosecution Agreement, at 12-14, ¶¶ 13-19, ECF No. 4 (Jan. 7, 2021).

[12] The Government determined this amount with the assistance of financial experts in personal economic loss who analyzed restitution information that Family members submitted at the Government's request. *See* Oct. 9, 2024 Government letter to Families, ECF No. 271-1 (requesting "information and records related to potential restitution claims"). In arriving at the amount, the Government did not request, and the financial experts did not consider, any other compensation amounts the Families may have received to date, whether from the DPA's Crash-Victims Beneficiaries Fund or civil settlements with Boeing. And like the DPA, under the NPA, Boeing will agree that it will not use the fact that any beneficiary of the crash victims seeks or receives any compensation from the Crash-Victim Beneficiaries Compensation Fund to seek to preclude such beneficiary from pursuing any other lawful claim that such beneficiary might have against Boeing.

improvements Boeing has made since the parties proposed the plea agreement last summer and the FAA's sustained, enhanced oversight of the Company since the Alaksa Airlines Flight 1282 incident.[13] The FAA's enhanced oversight includes, for example, placing many fulltime, in-person inspectors at each major Boeing production facility, who independently conduct audits, investigate complaints, and have free access to Boeing personnel to continuously evaluate safety and compliance, including the compliance issues that were the basis for the Government's DPA-breach determination.

- Boeing's Board of Directors must meet with the Families to hear directly from them about the impact of the Company's conduct, as well as the Company's compliance, safety, and quality programs.

Because the Government anticipates filing a motion to dismiss by no later than the end of next week, in order to avoid unnecessary litigation and expenditure of resources, the Government respectfully moves, with Boeing's consent, for the Court to continue the filing deadline for motions *in limine* from May 27, 2025, to June 2, 2025.[14] A proposed Order accompanies this filing.

---

[13] In considering whether a monitorship is necessary, Department and Criminal Division policy requires prosecutors to assess, among other things, the state of the company's compliance and ethics program at the time of a resolution, as well as whether the company is otherwise subject to government oversight. JM § 9-28.1700(A)(10), (B); Memorandum of the Head of the Criminal Division on *Selection of Monitors in Criminal Division Matters*, at 3 (May 12, 2025), *available at* https://www.justice.gov/criminal/media/1400036/dl?inline.

[14] Scheduling Order, at 6, ¶ 17(e), ECF No. 294 (Mar. 25, 2025).

Respectfully submitted,

LORINDA I. LARYEA                         CHAD E. MEACHAM
Acting Chief, Fraud Section,              Acting United States Attorney
Criminal Division                         Northern District of Texas
United States Department of Justice


By: *s/ Sean P. Tonolli*                   *s/ Chad E. Meacham*
Sean P. Tonolli                           Texas Bar No. 00784584
Senior Deputy Chief                       chad.meacham@usdoj.gov
D.C. Bar No. 503346
sean.tonolli@usdoj.gov


United States Department of Justice       United States Attorney's Office
Criminal Division, Fraud Section          Northern District of Texas
1400 New York Avenue, N.W.                801 Cherry Street, 17th Floor
Washington, D.C. 20005                    Fort Worth, TX 76102
202-514-2000                              817-252-5200


cc: Counsel of Record (via ECF)