## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cr-00005-O |
| | ) | |
| THE BOEING COMPANY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

## MOTION FOR APPOINTMENT OF A SPECIAL PROSECUTOR

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................... iv

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................... 1

II.   FACTUAL BACKGROUND ............................................................................ 3

   A.   The Criminal Charges and Deferred Prosecution Agreement............................. 3

   B.   The Pending Motion to Dismiss Which Should Clearly Be Denied. ................... 4

   C.   The Non-Prosecution Agreement's Unprecedented Provision ............................ 5

   D.   The Government's Violation of Rule 48(a), the CVRA, and the Constitution ................. 6

III.  THE GOVERNMENT'S UNPRECEDENTED DECISION TO USE AN NPA WHICH
USURPS THIS COURT'S AUTHORITY REQUIRES IMMEDIATE APPOINTMENT OF A
SPECIAL PROSECUTOR.................................................................................... 8

   A.   The Government Has Contracted Away Its Duty to Consider, and this Court's Power of,
   Judicial Review .......................................................................................... 8

   B.   The Government's Actions Threaten the Integrity of Rule 48(a) ...................... 9

   C.   The Extraordinary Nature of This Case Demands Extraordinary Measures ..................... 9

IV.   LEGAL STANDARD AND AUTHORITY FOR APPOINTMENT OF SPECIAL
PROSECUTOR.................................................................................................. 10

   A.   The Victims' Families Have Standing to Request Appointment of a Special Prosecutor . 10

   B.   Courts Possess Inherent Authority to Appoint Special Prosecutors................................. 11

      1. Supreme Court Recognition of Judicial Authority to Appoint Prosecutors................9

      2. Inherent Judicial Authority Under *Young v. United States*................................10

      3. Continued Recognition in *United States v. Providence Journal Co*...…………………...10

   C.   The Seventh Circuit's Contrary Position Is Unpersuasive and Not Controlling .............. 13

      1. The Seventh Circuit's Position Conflicts with Fifth Circuit Precedent………………..11

      2. The Seventh Circuit's Interpretation Renders Rule 48(a) Meaningless and Flouts the

      Framers' Insistence on Separation of Powers…………………………………………11

      3. The Seventh Circuit Failed to Consider Key Supreme Court Precedent……………..12

   D.   The Historical Practice of Private Prosecution Supports Preserving Judicial Authority

   To Appoint Prosecutors ..................................................................................... 15

   E.   Appointments Clause Concerns Are Unfounded ............................................. 17

1. Inherent Judicial Authority Predates Appointment Clause Analysis......................15

2. Single-Case Prosecutors are not "Officers of the United States"..........................15

3. Distinction from Other Special Counsel Appointments........................................16

F.    The All Writs Act Provides Additional Statutory Authority ............................................ 19

V.    PRECEDENT SUPPORTS APPOINTMENT OF A SPECIAL PROSECUTOR IN THIS CASE ................................................................................................................................... 19

A.    *United States v. Cowan* Provides a Direct and Persuasive Precedent to Follow ............. 19

B.    The *Cowan* Order Provides a Template for This Court .................................................... 20

C.    Other Courts Have Recognized the Appropriateness of Special Prosecutors................... 21

VI.    THE APPOINTMENT SHOULD BE MADE IMMEDIATELY ..................................... 21

A.    Delay Would Serve No Useful Purpose. ........................................................................... 21

B.    Immediate Appointment Would Eliminate Further Delay. ................................................ 22

C.    The Speedy Trial Act Supports Immediate Action ........................................................... 22

VII.    CONCLUSION AND PRAYER FOR RELIEF................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Auffmordt v. Hedden*, 137 U.S. 310, 326-27 (1890) ....................................................... 19

*Bob Jones University v. U.S.,* 456 U.S. 922, (1982) ......................................................... 14

*In re Ryan*, 88 F.4th 614, 627 (5th Cir. 2023) ....................................................... passim

*In re United States*, 345 F.3d 450 (7th Cir. 2003) ................................................... 14, 15

*Lucia v. Securities and Exchange Comm'n*, 585 U.S. 237 (2018) ............................................ 18

*Morrison v. Olson*, 487 U.S. 654 (1988) ....................................................... 12, 13

*U.S. v. Abreu*, 747 F. Supp. 493, 502 (N.D. Ind. 1990) .................................................. 16

*U.S. v. Arpaio*, 906 F.3d 800, 804 (9th Cir. 2018) ...................................................... 13

*U.S. v. Fausto*, 480 U.S. 904, 1 (1987) ............................................................. 14

*U.S. v. Vasquez*, 966 F.2d 254 (7th Cir. 1992) ...................................................... 16

*United States v. Cowan*, 396 F. Supp. 803 (N.D. Tex. 1974) ............................................ 19, 20,21

*United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975) .................................... 8, 4, 15, 20

*United States v. Donziger*, 38 F.4th 290 (2d Cir. 2022), *cert. denied*, 143 S.Ct. 868 (2023).. 18, 21

*United States v. Greater Blouse, Skirt & Neckwear Con. Ass'n.,* 228 F.Supp. 483, 486
(S.D.N.Y.1964)........................................................................................ 16

*United States v. New York Tel. Co.*, 434 U.S. 159, 172-73 (1977)........................................ 19

*United States v. Providence Journal Co.*, 485 U.S. 693 (1988).......................................... 13, 14

*Unites States v. Shanahan,* 168 F.Supp. 225, 228 (S.D. Ind. 1959) ...................................... 16

*Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987)........................................ 13, 18

*Young v. United States*, 315 U.S. 257, 259 (1942) ..................................................... 15

## Statutes

18 U.S.C. § 3161(h)(7) ............................................................................... 22

18 U.S.C. § 3771(a)(5)................................................................................. 9

18 U.S.C. § 3771(b)(1). .............................................................................. 12

28 U.S.C. § 1651(a) .................................................................................. 19

31 U.S.C. § 3730 ..................................................................................... 17

33 U.S.C. § 1365 ..................................................................................... 17

42 U.S.C. § 300j-8 ................................................................................... 17

42 U.S.C. § 6972 ..................................................................................... 17

42 U.S.C. § 7604 ..................................................................................... 17

42 U.S.C. § 9659..................................................................................... 17

Cal. Bus. & Prof. Code § 17200 *et seq* ............................................................. 17

Rules Enabling Act, Pub. L. 73-415, 48 Stat. 1064 ..................................................... 8

## Other Authorities

150 Cong. Rec. 7296 (2004) ........................................................................... 9

Allen Steinberg, *From Private Prosecution to Plea Bargaining: Criminal Prosecution, the District Attorney, and American Legal History*, 30 CRIME & DELINQ. 568, 568 (1984). .... 16

Emma Kaufman, *The Past and Persistence of Private Prosecution*, 173 U. Pa. L. Rev. 89, 128 (2024). ................................................................................................................... 17

Jonathan Barth, *Criminal Prosecution in American History: Private or Public*, 67 S.D. L. Rev. 119, 121 (2022). ................................................................................................... 17

Paul G. Cassell, *The Crime Victims' Rights Movement: Historical Foundations, Modern Ascendancy, and Future Aspirations*, 56 U. Pac. L. Rev. [pending] ........................................ 16

U.S. Department of Justice, Office of Public Affairs, "False Claims Act Settlements and Judgments Exceed $2.9B in Fiscal Year 2024," press release, January 15, 2025 ..................... 17

**Rules**

Federal Rule of Criminal Procedure 48(a) ............................................................. 4, 8, 10

**Treatises**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 63 (2012) 14, 16

Montesquieu, *The Spirit of the Laws*, Book XI, Ch. 6 (1748) ...................................... 4

*The Federalist* No. 47 (Madison 1788) ........................................................................ 4

NOW COME the undersigned victims' families from Lion Air Flight JT610, through their counsel, and respectfully move this Honorable Court for the immediate appointment of a special prosecutor to handle the prosecution of The Boeing Company in the above-captioned matter. As set forth in detail below, extraordinary circumstances have arisen that require this Court to remove this case from the hands of the Department of Justice and place it with a disinterested prosecutor who will pursue justice without regard to institutional conflicts.

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

The Framers of the U.S. Constitution deliberately structured government to prevent consolidation of power in any single branch. Drawing directly from Montesquieu's *The Spirit of the Laws*, which sets forth the basis and rationale for separation of powers, they understood that liberty requires institutional checks against tyranny.[1] Madison's notes confirm the Framers viewed separation as essential to preventing the "accumulation of all powers, legislative, executive, and judiciary, in the same hands." *Id.* The separation percolates down and up, through those elected, appointed, and otherwise employed to carry out the function of each of the three branches. As such, the judicial authority of this Court presiding over the prosecution of Boeing, the executive authority of the DOJ carrying out the prosecution, and legislative authority of the CVRA, by design and intent of the Framers, are essential to ensure against tyranny or executive fiat.

No branch can punish—or exonerate—Boeing simply because they choose to do so. Justice is wrought from the essential separation of powers. The steady and just hum of the separation

---

[1] See Montesquieu, *The Spirit of the Laws*, Book XI, Ch. 6 (1748) ("When the legislative and executive powers are united in the same person, or in the same body of magistrates, there can be no liberty"); *The Federalist* No. 47 (Madison 1788) (citing Montesquieu's principle that "the accumulation of all powers, legislative, executive, and judiciary, in the same hands...may justly be pronounced the very definition of tyranny").

breaks down when the actions of one branch (in this case the inking of a Non Prosecution Agreement or "NPA") usurps the function of the other. That is precisely what has happened here.

This Motion arises from the Government's unprecedented attempt to circumvent the judicial review provisions of Federal Rule of Criminal Procedure 48(a). Since 1944, the Rule 48(a) "leave of court" requirement before the prosecution can dismiss a case has served as an important "check on the abuse of Executive prerogative." *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975). This judicial check on otherwise unconstrained power was "precisely what the Framers intended." *Id.* But rather than allowing this Court to exercise its duty to review the proposed dismissal of criminal charges in the public interest, the Government in this case, whether they intended it or not, has crafted and executed an NPA that contractually prohibits further prosecution regardless of this Court's ruling on the pending motion to dismiss.

As such, this NPA represents a dangerous erosion of the separation of powers. The NPA effectively usurps judicial authority by effectively denying this Court its long-recognized power to review the proposed dismissal under Rule 48(a), and it also flouts the legislative will to protect victims' families' rights under the Crime Victims' Rights Act (CVRA).

The moving parties therefore respectfully submit that only the appointment of a special prosecutor can restore the integrity of these proceedings and ensure that justice and time-tested canons of constitutional separation of power guide the resolution of this matter. This Court should immediately appoint a special prosecutor for the following reasons:

1. **Preservation of Judicial Authority**: The NPA's end-run around Rule 48(a) threatens to render judicial review of dismissal motions meaningless and sets a dangerous precedent for future cases.  The NPA flouts the long-standing rulemaking process for federal criminal proceedings—a process that produced Rule 48(a) more than seventy-five years ago. Rule

48(a) creates an appropriate separation of powers that the Government is not free to simply ignore.

2. **Protection of Victims' Rights and Preservation of Legislative Authority**: The families of the 346 people who died in the Boeing 737-MAX crashes have a right under the Congressionally enacted CVRA to meaningful participation in the Court's decision whether to dismiss the pending charge, which participation the present NPA has effectively nullified.

3. **Constitutional Imperative to Prevent Executive Fiat**: The extraordinary circumstances of this case—involving a highly irregular, verging-on-illusory contract between the executive branch and a large mega corporation which effectively nullifies judicial review and flouts legislative authority through violation of the CVRA—require immediate judicial intervention to preserve the integrity of our criminal justice system and, indeed, to preserve the integrity of the Constitution.

It is important to note that this conclusion does not require delving into the subjective intent of the lawyers for DOJ or Boeing or speculating about the role of current events or politics. None of that matters. What matters is that the NPA is now executed, the DOJ has filed a motion to dismiss predicated on the NPA, and the NPA itself appears to be a literal "heads I win, tails you lose" document benefitting Boeing, while usurping power from the judiciary and the legislative branch.

## II.    FACTUAL BACKGROUND

### A.  The Criminal Charges and Deferred Prosecution Agreement

On January 7, 2021, the Government filed a Criminal Information charging Boeing with conspiracy to defraud the United States in connection with the Federal Aviation Administration's evaluation of Boeing's 737 MAX aircraft. ECF No. 1. The charges arose from Boeing's concealment of important information about the Maneuvering Characteristics Augmentation

3

System (MCAS) from FAA regulators, which contributed to two crashes that killed 346 people. *Id.*

The Government simultaneously entered into a Deferred Prosecution Agreement (DPA) with Boeing, which this Court later concluded had been negotiated in violation of the CVRA's right for victims' families to reasonably confer about Boeing's prosecution. ECF No. 116 at 18. In light of that CVRA violation, the Fifth Circuit later ruled, at the request of the families, that in ruling on any motion to dismiss, this Court must "assess the public interest according to caselaw as well as the CVRA, including violations already admitted to, as well as any other circumstances brought to its attention by the victims' families." *In re Ryan*, 88 F.4th 614, 627 (5th Cir. 2023)

**B. The Pending Motion to Dismiss Which Should Clearly Be Denied.**

In the Opposition concurrently filed on the same day as this Motion ("Concurrent Victim Opposition"), other victims' families have persuasively explained why the Government pending motion to dismiss should be denied by this Court. Rather than repeat those arguments, the instant families filing this motion simply join in those compelling arguments made by the Concurrent Victim Opposition. For example, the instant families agree that the Government's non-prosecution agreement is unenforceable because it fails to contain a proper statute of limitations waiver from Boeing—meaning that there is no way to hold Boeing accountable to its commitments in the NPA.

But the moving parties diverge from the Concurrent Victim Opposition in one respect—they wish to take it one step further and accelerate the path to a just outcome here. The instant families as such believe that the only appropriate response is the **immediate appointment** of a special prosecutor to appropriately handle this case. The remainder of this brief explains their reasoning, which is complementary to, but distinct from, the views advanced by the other families in the Concurrent Victim Opposition.

4

## C. The Non-Prosecution Agreement's Unprecedented Provision

The reason the instant families seek the immediate appointment of a special prosecutor is that the Government's objective, documented track record to date which culminated in the execution of an NPA violating Rule 48(a) demonstrates that it unfortunately cannot be relied upon to fairly handle this case. Following this Court's rejection of the proposed guilty plea agreement (ECF No. 282), the Government entered into a new NPA with Boeing on May 29, 2025. ECF No. 312. While NPAs are typically entered *before* a criminal case is lodged in court, this NPA is being proposed *after* criminal charges have been filed, after this Court rejected a plea deal, and after the DOJ had found Boeing to have breached the January 2021 Deferred Prosecution Agreement. Most importantly, the NPA contains an unprecedented provision that goes far beyond standard practice.

That is, Paragraph 22 of the NPA specifically states that even if this Court denies the Government's motion to dismiss, the Government "remain[s] bound by the terms of this Agreement not to further criminally prosecute the Company for any crimes related to any of the conduct in the Statement of Facts." ECF No. 312-1 at pp. 10-11. This provision effectively renders any judicial review under Rule 48(a) meaningless, as the Government has already contractually committed to not prosecute regardless of the Court's decision. Indeed, if there were any doubt about this Court's obligation, the Fifth Circuit has already ruled (in a petition connected to this very case) that "we clarify that if judicial approval is sought to resolve the instant case [i.e., the criminal prosecution of Boeing], the district court has an ongoing obligation to uphold the public interest and apply the CVRA. That authority continues, therefore, regardless of the resolution method ultimately pursued to resolve the criminal proceedings, whether Rule 23 trial, Rule 11 guilty plea, or *Rule 48 dismissal order*." *In re Ryan*, 88 F.4th 614, 627 (5th Cir. 2023) (emphasis added). The Government is ignoring this "law of the case" by trying to prevent this Court's "public interest" assessment.

5

**D. The Government's Violation of Rule 48(a), the CVRA, and the Constitution**

The Government's actions violate Rule 48(a), the victims' families' rights under the CVRA, and ultimately the constitutional separation of powers in several ways:

1. **Circumvention of Judicial Review**: By entering into a binding agreement not to prosecute before the Court has ruled on the motion to dismiss, the Government has effectively circumvented the judicial review contemplated by Rule 48(a)—and the Fifth Circuit in *In re Ryan*. This directly flouts the original intent of the Framers and is a textbook violation of separation of powers. Article I of the Constitution vests "all legislative Powers" in Congress, Article II grants "executive Power" to the President, and Article III extends "judicial Power" to the federal courts. The Framers deliberately used these exclusive grants of power to create separate branches, drawing from Montesquieu's theory that liberty requires preventing any single entity from wielding multiple governmental functions. It should be further noted that in 1934, Congress passed—and the President signed—the Rules Enabling Act, Pub. L. 73-415, 48 Stat. 1064. This Act gave the Courts power to adopt rules of court, with a congressional approval requirement. As recounted in *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975), after that Enabling Act came into effect, "a distinguished committee commissioned by the Supreme Court" began working on federal rules of criminal procedure. During the drafting process, the Court observed that more than thirty states had given "courts a responsible role in the dismissal of a pending criminal proceeding by requiring an 'order' or 'leave' or 'consent' of court." *Id.* at 509-10. Ultimately, the Court promulgated Rule 48(a), tracking the prevailing rule in the states, and the rule became effective after the congressional review period ended. Rule 48(a) has been the law governing dismissal motions in federal court for more than 75 years. Under the rule, the Executive Branch retains largely unreviewable power to decide *whether* to file

criminal charges. But once the Executive Branch chose to submit a case to the courts for resolution, a judicial role exists. As the Fifth Circuit has explained, "the court vigilantly will enforce the public interest, including Congress' command that crime victims are heard and protected." *In re Ryan*, 88 F.4th at 626. There is no Article or Clause in the Constitution that provides for contracting around this separation of powers that Rule 48(a) creates— pursuant to a long-established Court rule that Congress has chosen to leave in place.

2. **Failure to Meaningfully Confer and comply with the CVRA, flouting legislative authority and the executive branch's obligation to enforce the legislative will of Congress**: In 2004, Congress enacted the Crime Victims' Rights Act because it found that in case after case victims "were kept in the dark by prosecutors too busy to care . . . and by a court system that simply did not have a place for them." 150 Cong. Rec. 7296 (2004) (colloquy by Sens. Feinstein and Kyl). Previously, as the Court has held, the Government did precisely what Congress had forbidden: it kept the victims' families "in the dark" while it was negotiating the NPA. One would have thought that the Government would have had the victims' families firmly in mind at this late stage in this case. And yet, in explaining it proposed NPA deal with Boeing to the families, the Government failed to disclose the unprecedented Paragraph 22 provision during its conferral sessions with the victims' families, depriving them of the opportunity to meaningfully participate in discussions about the resolution of the case. *See* Concurrent Victim Opposition, Transcript of May 16, 2025 Conferral (no mention of anything like paragraph 22). This failure to disclose such a vital piece of the NPA directly flouts the CVRA's requirement that prosecutors "reasonably confer" with victims, 18 U.S.C. § 3771(a)(5), and once again therefore is an afront to

separation of powers by flouting legislative authority that victims must be allowed to have voice when deals are being crafted.

3. **Denial of Right to Be Heard**: The victims' families' right to be heard on the motion to dismiss has been rendered meaningless by the Government's anticipatory agreement not to prosecute. This too directly flouts the CVRA, and once again is an afront to separation of powers by flouting legislative authority to structure the criminal justice process. The Fifth Circuit has commanded that, in deciding whether to dismiss this case, this Court "must assess the public interest as well as the CVRA," including any "circumstances brought to it attention by the victims' families." *In re Ryan*, 88 F.4th at 627. But the Government's agreement prevents that fully informed judicial assessment.

## III. THE GOVERNMENT'S UNPRECEDENTED DECISION TO USE AN NPA WHICH USURPS THIS COURT'S AUTHORITY REQUIRES IMMEDIATE APPOINTMENT OF A SPECIAL PROSECUTOR

### A. The Government Has Contracted Away Its Duty to Consider, and this Court's Power of, Judicial Review

The Government's entry into the NPA with its no-further-prosecution provision will have the unprecedented effect of circumventing judicial review under Rule 48(a). By contractually committing not to prosecute regardless of this Court's ruling, the Government's NPA has effectively rendered any judicial review meaningless—contravening the provisions of a duly enacted court rule. This current circumstance goes far beyond the typical case where prosecutors exercise discretion about whether to pursue charges. Here, the Government has filed charges, submitted the case to judicial resolution, and then for whatever reason, has decided to dismiss the charges. But rather than submit its dismissal decision to the judicial review specified in Rule 48(a), it has entered into a contract with a criminal defendant which ignores the authority of the judiciary (i.e. Rule 48(a)). Indeed, on the facts of this case, the Government is also ignoring the

congressional decision to give crime victims and their families rights under the CVRA. By attempting to circumvent any effective judicial review of its dismissal decision, the Government is blocking victims from having input into that decision—a violation of the CVRA. As the Fifth Circuit has ruled, in deciding whether to approve the dismissal motion, this Court must "assess the public interest according to caselaw as well as the CVRA, including violations already admitted to, as well as any other circumstances brought to its attention by the victims' families." *In re Ryan*, 88 F.4th 614, 627 (5th Cir. 2023). The Government seeks to make that victim-informed public interest decision a nullity.

### B. The Government's Actions Threaten the Integrity of Rule 48(a)

Rule 48(a) was designed to provide meaningful judicial review so that "[t]he public and crime victims, not to mention the government and defendants, necessarily and correctly see accountability with Article III from start to finish." *In re Ryan*, 88 F.4th at 625 n.9. If this Court allows the NPA to stand, it will likely become the blueprint for all future dismissal motions. This NPA is one of the most dangerous documents to emerge in recent criminal jurisprudence. If the current NPA resolves this case without further consequence, prosecutors in other cases will routinely enter into non-prosecution agreements containing similar provisions, making Rule 48(a) review a meaningless formality. NPAs like the instant one would, in aggregate, create a fourth branch of power.

### C. The Extraordinary Nature of This Case Demands Extraordinary Measures

This case involves what this Court has called "the deadliest corporate crime in U.S. history." ECF No. 185 at 25 (recounting earlier finding, ECF No. 116 at 16, that Boeing "directly and proximately" killed 346 people by lying to the FAA). The Government's decision to enter into a binding agreement not to prosecute before allowing meaningful judicial review is particularly troubling given the magnitude of the crimes and the number of victims involved.

The 346 people who died in the Boeing 737 MAX crashes, and their families, deserve better than a prosecution that is subject to political considerations and institutional conflicts. They deserve a focused, zealous and fair prosecution which pursues justice with appropriate respect for the Constitution and the rights of the victims.

## IV.    LEGAL STANDARD AND AUTHORITY FOR APPOINTMENT OF SPECIAL PROSECUTOR

### A.    The Victims' Families Have Standing to Request Appointment of a Special Prosecutor

The victims' families have standing to seek appointment of a special prosecutor based on their rights under the CVRA and the Fifth Circuit's decision in *In re Ryan*. This Court has previously ruled that "credible evidence proves" the families' "status as lawful representatives of 'crime victims' under the CVRA and they therefore have standing to assert rights under the Act." ECF No. 116 at 18. The Fifth Circuit has likewise made clear that the families are entitled to be heard before any dismissal of the charges, observing specifically that this Court "must uphold crime victims' statutory rights at every stage of the court's criminal proceedings." *In re Ryan*, 88 F.4th at 627. On the unique and unfortunate facts of this case, the families must be heard as they advance their argument for a special prosecutor. The current prosecutors—the Justice Department—have contractually disabled themselves from protecting the families' CVRA rights. Under the CVRA, "[i]n any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights" described in the CVRA. 18 U.S.C. § 3771(b)(1). The only way in which the families can be afforded their rights to confer about further prosecution of Boeing—and to have the Court consider their arguments against dismissing the charges—is by appointing a separate and special prosecutor who is not bound by paragraph 22 of the NPA.

### B.  Courts Possess Inherent Authority to Appoint Special Prosecutors

Federal courts possess inherent authority to appoint special prosecutors in appropriate circumstances. The Supreme Court has recognized this authority in multiple contexts and has specifically rejected arguments that such appointments violate separation of powers principles:

### 1. Supreme Court Recognition of Judicial Authority to Appoint Prosecutors

In *Morrison v. Olson*, 487 U.S. 654 (1988), the Supreme Court explicitly rejected the argument that courts lack authority to appoint prosecutorial officers. The Court stated that it "disagree[d] with the Court of Appeals' conclusion that there is an inherent incongruity about a court having the power to appoint prosecutorial officers." *Id.* at 676. The Court further noted that "in light of judicial experience with prosecutors in criminal cases, it could be said that courts are especially well qualified to appoint prosecutors." *Id.* at 676 n.13. The Court provided numerous examples of judicial appointment of prosecutorial officers, including:

- Private attorneys to prosecute judicial contempt judgments;

- United States commissioners with prosecutorial powers;

- Federal marshals, who are executive officers;

- Interim United States Attorneys who prosecute criminal cases; and

- Congressional authorization for district courts to make interim appointments

     *Id.* at 676-77.

### 2. Inherent Judicial Authority Under *Young v. United States*

The Supreme Court's decision in *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987), establishes that courts possess "inherent authority to initiate contempt proceedings for disobedience to their orders, authority which necessarily encompasses the ability to appoint a private attorney to prosecute the contempt." *Id.* at 793. Importantly, *Young* makes clear that this

inherent authority extends beyond narrow contempt proceedings. The Court explained that the "underlying concern that gave rise to the contempt power was not, however, merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial." *Id.* at 797; *see also U.S. v. Arpaio*, 906 F.3d 800, 804 (9th Cir. 2018) (Fletcher, J., concurring) ("Such an appointment, as the Court's opinion in *Young* makes clear, is 'part of the judicial function,' enabling the judiciary 'to protect itself if [the Executive] Branch decline[s] prosecution'" (quoting *Young*)). The *Young* Court emphasized that this power is "essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *Young*, 481 U.S. at 798. When the Government chooses to launch a criminal prosecution before a court, subsequent limits on the Government's ability to dismiss that prosecution arise "directly" from its participation in the ensuing "judicial proceedings."

### 3. Continued Recognition in *United States v. Providence Journal Co.*

The year after *Young*, the Supreme Court reaffirmed the principle that courts have inherent authority to pursue prosecutions to vindicate judicial authority. In *United States v. Providence Journal Co.*, 485 U.S. 693 (1988), the Court emphasized the "inherent authority of a federal court to ... appoint a private attorney to prosecute [a] contempt action." *Id.* at 702. The Court explained that this "power, considered to be a part of the judicial function, is grounded first and foremost upon necessity: The ability to punish disobedience to judicial orders is 'regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other branches.'" *Id.* at 701-02. While it is true that the *Providence* court concluded that a court appointed prosecutor did not have authority to pursue litigation before the U.S. Supreme Court, it decisively ruled that the Supreme Court did have other analogous powers and inherent authority to discharge its own powers, observing that it is well within this Court's authority to appoint an

12

*amicus curiae* to file briefs and present oral argument in support of that judgment." See *Providence J.*, 485 U.S. at 703-04 (citing, e.g., *Bob Jones University v. U.S.,* 456 U.S. 922, (1982) (order appointing *amicus curiae* in support of judgment); *U.S. v. Fausto,* 480 U.S. 904, 1 (1987) (same)).

### C.  The Seventh Circuit's Contrary Position Is Unpersuasive and Not Controlling

Moving party anticipates that the Government and/or Boeing may point to the Seventh Circuit's decision in *In re United States*, 345 F.3d 450 (7th Cir. 2003), which criticized the appointment of special prosecutors. Indeed, in its motion to dismiss, the Government seems to indicate that it intends to present the position of *In re United States* to the Supreme Court. *See* Doc. 312 at 10 n.54. However, that decision is not controlling in this Circuit and is, in any event, entirely unpersuasive.

#### 1. The Seventh Circuit's Position Conflicts with Fifth Circuit Precedent

The Seventh Circuit's decision is fundamentally inconsistent with Fifth Circuit precedent establishing that courts can deny motions to dismiss when "clearly contrary to manifest public interest." The Seventh Circuit criticized this position as mere "speculations in some judicial opinions," but the Fifth Circuit has repeatedly reaffirmed this authority, most recently in *In re Ryan*.

#### 2. The Seventh Circuit's Interpretation Renders Rule 48(a) Meaningless and Flouts the Framers Insistence on Separation of Powers

The Seventh Circuit's position appears to render Rule 48(a)'s leave-of-court requirement essentially meaningless. If a duly enacted rule providing for judicial review cannot be judicially enforced, then the rule becomes pointless. This contradicts the well-settled principle that legal rules should not be interpreted in ways that make them meaningless. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 63 (2012).

More important, the Seventh Circuit, with all due respect to that Circuit's judiciary, ignores the dangers its position poses to separation of powers.  Rule 48(a)'s requirement for Court approval

13

tracks the rule in a majority of states and has been placed in the Federal Rules as part of the Supreme Court's authority under the Rules Enabling Act. This structural safeguard in the court rules embodies the Framers' design—each branch maintains distinct constitutional roles that cannot be conclusively determined by another branch's recommendations. *See Cowan*, 524 F.2d at 513 (explaining that "resulting balance of power" from Rule 48(a) is "precisely what the Framer's intended"). The rule ensures that dismissal decisions are subject to judicial review to protect the public interest. Without such judicial oversight, the executive would have unchecked powers to dismiss criminal proceedings that it previously chosen to "submit[]" to the courts "for judicial resolution." *Ryan*, 88 F.4th at 625. This is precisely the concentration of power that could bring federal criminal proceedings into disrepute. Indeed, the very basis for Rule 48(a) was that "[t]he public interest that a result be reached which promotes well-ordered society is foremost in every criminal proceeding. The interest is entrusted to our [the Judiciary's] consideration and protection as well as that of the enforcing officers." *United States v. Cowan*, 524 F.2d 504, 510 (5th Cir. 1975) (quoting *Young v. United States*, 315 U.S. 257, 259 (1942)).

Fortunately, regardless, Fifth Circuit precedent is controlling on this case. Indeed, in *In re Ryan*, 88 F.4th at 627, the Fifth Circuit repeatedly reiterated this need for judicial oversight. Thus, the Seventh Circuit's decision is both unpersuasive and not controlling. Perhaps this is why the Government notes its disagreement with the Fifth Circuit case law "[t]o preserve the issue for review" (ECF No. 312 at 10 n.54) – presumably Supreme Court review.

### 3. The Seventh Circuit Failed to Consider Key Supreme Court Precedent

Remarkably, the Seventh Circuit's decision in *In re United States*, 345 F.3d 450 (7th Cir. 2003) failed to cite *Morrison v. Olson* in its analysis, despite the Supreme Court's clear statement that courts are "especially well qualified to appoint prosecutors." The Seventh Circuit's position

14

cannot be reconciled with the Supreme Court's explicit rejection of arguments that judicial appointment of prosecutors violates separation of powers principles.

It is also important that a legal rule should not be interpreted in ways that make the rule meaningless. *See, e.g.,* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 63 (2012) ("A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored."). As one court put it, "[r]ecommendations by the prosecutor that charges be dismissed are not conclusive upon the court, otherwise there would be no purpose to Rule 48(a), which requires leave of court for the dismissal of an indictment." *U.S. v. Abreu*, 747 F. Supp. 493, 502 (N.D. Ind. 1990), aff'd sub nom. *U.S. v. Vasquez*, 966 F.2d 254 (7th Cir. 1992) (citing *Cowan,* 524 F.2d at 511 (citing *United States v. Greater Blouse, Skirt & Neckwear Con. Ass'n.,* 228 F.Supp. 483, 486 (S.D.N.Y.1964)); *Shanahan,* 168 F.Supp. at 228).

### D. The Historical Practice of Private Prosecution Supports Preserving Judicial Authority to Appoint Prosecutors

The historical practice of private prosecution in America supports the conclusion that prosecution is not exclusively an executive function. Recent scholarship has established that private prosecution was the dominant feature of American criminal justice when the Constitution was drafted. As Professor Paul Cassell has noted, scholars "all converge in agreeing—with strong supporting evidence—that private prosecutions were common in the states when (and after) the Constitution and the Bill of Rights were drafted." Paul G. Cassell, *The Crime Victims' Rights Movement: Historical Foundations, Modern Ascendancy, and Future Aspirations*, 56 U. Pac. L. Rev. [pending] at * 25.[2]  For example, Allen Steinberg's 1984 work *From Private Prosecution to*

---

[2]  https://papers.ssrn.com/sol3/papers.cfm?abstract_id=5133182 (last accessed June 17, 2025); final publication pending.

*Plea Bargaining* challenges "the general assumption that the gates of the American criminal justice process have always been guarded by public prosecutors" through "an examination of the case law and social history of criminal" prosecution. Allen Steinberg, *From Private Prosecution to Plea Bargaining: Criminal Prosecution, the District Attorney, and American Legal History*, 30 CRIME & DELINQ. 568, 568 (1984). As Professor Barth has concluded, private prosecution "certainly remained prolific at the time of the framing of the Constitution." Jonathan Barth, *Criminal Prosecution in American History: Private or Public*, 67 S.D. L. Rev. 119, 121 (2022). The prevalence of private prosecution makes it difficult to argue that the Framers intended prosecution to be exclusively an executive function.

It is important to emphasize that this Court need not rest its final decision here exclusively on an originalist interpretation of the Constitution. The Framers anticipated rightly and with great prescience it appears because private prosecution is alive and well in the modern American legal system at both the state and federal level. Under the False Claims Act's *qui tam* provisions 31 U.S.C. § 3730, private citizens regularly prosecute fraud cases on behalf of the government, recovering over $78 billion in taxpayer funds since 1986, with the Department of Justice obtaining more than $2.9 billion in settlements and judgments in fiscal year 2024 alone. *See* U.S. Department of Justice, Office of Public Affairs, "False Claims Act Settlements and Judgments Exceed $2.9B in Fiscal Year 2024," press release, January 15, 2025, https://www.justice.gov/archives/opa/pr/false-claims-act-settlements-and-judgments-exceed-29b-fiscal-year-2024 (accessed June 17, 2025)

Beyond federal *qui tam* actions, private prosecution persists at the state level. Professor Kaufman's recent article concludes that "there appears to be a steady history of private prosecution in the twentieth century." Emma Kaufman, *The Past and Persistence of Private Prosecution*, 173

16

U. Pa. L. Rev. 89, 128 (2024). It remains legal in seven states for non-state actors to initiate and litigate criminal cases, and in twenty-seven total, private prosecutors can appear alongside public ones or present directly to grand juries. *Id.* at 129. Additionally, numerous "private attorney general" statutes—including federal environmental laws and California's Unfair Competition Act—authorize "any person" to enforce statutory violations through civil suits. *See e.g.,* the Clean Water Act (33 U.S.C. § 1365), Clean Air Act (42 U.S.C. § 7604), Resource Conservation and Recovery Act (42 U.S.C. § 6972), Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. § 9659), and Safe Drinking Water Act (42 U.S.C. § 300j-8); California UCL: Cal. Bus. & Prof. Code § 17200 *et seq*. This extensive contemporary framework of private prosecution demonstrates that the prosecutorial function has never been monopolized by the executive branch, supporting the historical understanding that the Framers did not intend prosecution to be exclusively governmental.

To be sure, most of the examples of private prosecution in recent American history have come from state prosecutions. But "the functional reason a right of private prosecution failed to develop in the federal system stems from the happenstance of the limited kinds of crimes within federal jurisdiction at the time." Cassell, *supra*, at * 22. In any event, the power of federal courts to appoint special prosecutors in appropriate circumstances in federal cases has been recognized by the Supreme Court. *See Young v. United States ex rel. Vuitton et Fils*, 481 U.S. 787 (1987). And federal courts have recently used that power in other cases. *See, e.g., United States v. Donziger*, 38 F.4th 290 (2d Cir. 2022), *cert. denied*, 143 S.Ct. 868 (2023).

### E. Appointments Clause Concerns Are Unfounded

In the *Donziger* case just cited, the Second Circuit rejected an Appointment Clause challenge to a court-appointed special prosecutor. It is worth explaining why any argument that

the Appointments Clause prevents judicial appointment of a special prosecutor is unfounded for several reasons:

### 1. Inherent Judicial Authority Predates Appointments Clause Analysis

Because *Young* and *Providence Journal* establish that appointment of special prosecutors is part of "inherent" judicial authority under Article III, the Appointments Clause specification of alternative appointment approaches is not implicated. A special prosecutor appointed by the court would not be an executive officer but a judicial officer, similar to court-appointed defense counsel.

### 2. Single-Case Prosecutors Are Not "Officers of the United States"

A prosecutor appointed to pursue a single criminal case, which is what the moving parties seek here, is not an "Officer of the United States" covered by the Appointments Clause. To qualify as such an officer, a person must occupy a "continuing" position established by law. *Lucia v. Securities and Exchange Comm'n*, 585 U.S. 237, 245 (2018). A special prosecutor appointed to handle only this case would have very limited functions extending no further than this "particular case." Such a prosecutor would not be an "officer" requiring compliance with the Appointments Clause. *See Auffmordt v. Hedden*, 137 U.S. 310, 326-27 (1890).

### 3. Distinction from Other Special Counsel Appointments

The limited scope of the proposed appointment distinguishes this case from other special counsel appointments that have faced Appointments Clause challenges. Unlike broadly empowered special counsels, a court-appointed prosecutor here would have authority only to present evidence supporting the already-filed charge within existing rules of evidence and criminal procedure, and all of this only within the confines of a highly focused prosecution of The Boeing Company in connection with two specific crashes and a very specific class of aircraft. *See* ECF No. 1 (previously filed Criminal Information against Boeing).

**F.   The All Writs Act Provides Additional Statutory Authority**

In addition, the All Writs Act, 28 U.S.C. § 1651(a), provides additional statutory authority for the court appointment of a special prosecutor. The Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The appointment of a special prosecutor to pursue an already-filed criminal charge would clearly be "calculated" in the court's sound judgment "to achieve the ends of justice entrusted to it." *United States v. New York Tel. Co.*, 434 U.S. 159, 172-73 (1977).  The All Writs Act authorization would be particularly germane here when an NPA has essentially usurped the power of the Court under Rule 48(a).

**V.    PRECEDENT SUPPORTS APPOINTMENT OF A SPECIAL PROSECUTOR IN THIS CASE**

**A.  *United States v. Cowan* Provides a Direct and Persuasive Precedent to Follow**

In *United States v. Cowan*, 396 F. Supp. 803 (N.D. Tex. 1974), this very district court faced a similar situation where the Government declined to prosecute after a district court denied a motion to dismiss. Judge Robert M. Hill appointed special prosecutors, explaining that there was "inherent power of the judiciary to affect the proper and orderly administration of justice by appointing special prosecuting officials where necessary for the prevention of abuses of unfettered prosecutorial discretion." *Id.* at 805-06.

Judge Hill appointed Wayne O. Woodruff and Patrick E. Higginbotham as special prosecutors, giving them "full authority to control the course of investigation and litigation related to the offenses charged in the indictment and to handle all aspects of the case to the same extent as a United States Attorney in any criminal prosecution." *Id.* at 806. In that case, the prosecutors followed the standard approach to a motion to dismiss. They filed their motion with the district court, which ultimately denied the motion. Thereafter, and presumably after considering the district

court's decision as to why dismissal was inappropriate, the prosecutor nonetheless decided that further prosecution by their office was inappropriate. They notified the district court of that informed decision, and subsequently Judge Hill appointed special prosecutors.[3]

Here, for reasons that have not been explained, the Government has sought to short-circuit that back-and-forth, respectful consideration of views. Instead, the Government has simply effectively and implicitly announced that it does not appear to care what this Court's views are on its motion to dismiss. Given that preemptive decision by the Government that is already in effect, this Court should respond in the only appropriate way: with the immediate appointment of a special prosecutor.

### B.  The *Cowan* Order Provides a Template for This Court

The Court in *Cowan* entered the following order, which could serve as a template here:

> "For the foregoing reasons, it is accordingly Ordered that Wayne O. Woodruff and Patrick E. Higginbotham be appointed special prosecutors, sharing equally all the powers and responsibilities enumerated in this order. It is further Ordered that Andrew Barr be appointed as first assistant to the special prosecutors.
>
> The above named persons are qualified attorneys who are admitted to practice before the Supreme Court of Texas, the United States Court for the Northern District of Texas, the Court of Appeals for the Fifth Circuit and the United States Supreme Court.
>
> It is further Ordered that the jurisdiction and role of the special prosecutors in this case should be limited solely to the prosecution of the defendant Jake Jacobsen on the seven count indictment returned by the federal grand jury on February 6, 1974, in the United States District Court for the Northern District of Texas, San Angelo Division. The special prosecutors shall have full authority to control the course of investigation and litigation related to the offenses charged in the indictment and to handle all aspects of the case to the

---

[3] Ultimately, the Fifth Circuit reversed Judge Hill's denial of the motion to dismiss, clarifying the standards to be used in reviewing motion to dismiss. But the Fifth Circuit directly stated that it was addressing district court power to appoint special prosecutors. *United States v. Cowan*, 524 F.2d 504, 515 (5th Cir. 1975).

same extent as a United States Attorney in any criminal prosecution."

*Cowan*, 396 F.Supp. at 806.

It is important to emphasize that this appointment would allow the special prosecutor to "handle all aspects of the case" as a U.S. Attorney would. Thus, the special prosecutor would be bound to follow Justice Department policies along with (of course) court rules and the rules of legal ethics. And, most important, the special prosecutor could ensure that the "public interest" was protected in the handling of this case.

### C. Other Courts Have Recognized the Appropriateness of Special Prosecutors

Federal courts have recognized the appropriateness of appointing special prosecutors in various contexts. *See, e.g., United States v. Donziger*, 38 F.4th 290, 304 (2d Cir. 2022) (upholding appointment of special prosecutor in contempt case); *United States v. Arpaio*, 887 F.3d 979, 982 (9th Cir. 2018) (courts "have inherent authority to appoint a special counsel to represent a position abandoned by the United States on appeal").

## VI.   THE APPOINTMENT SHOULD BE MADE IMMEDIATELY

The appointment of a special prosecutor in this instance is urgently needed for the following reasons:

### A. Delay Would Serve No Useful Purpose.

Unlike other victims' families who have suggested that appointment of a special prosecutor should wait until after the Court rules on the motion to dismiss, the families represented by undersigned counsel believe immediate appointment is necessary. The Government's preemptive agreement not to prosecute makes clear that there is no point in waiting for the Government to consider this Court's ruling—it appears that it has already decided to ignore any adverse ruling.

21

### B.  Immediate Appointment Would Eliminate Further Delay.

The Government has provided no real explanation for why it took months to negotiate the NPA. The appearance it has created is that it will continue to drag its feet until there is a firm court deadline. Immediate appointment of a special prosecutor would eliminate any further delay and allow this case to move forward expeditiously.

### C.  The Speedy Trial Act Supports Immediate Action

The Speedy Trial Act clock in this case has only about three weeks remaining. The Government's motion to dismiss, filed on May 29, 2025 (ECF No. 312), stopped the Speedy Trial clock which was set to expire several weeks later. While additional time could be excluded under the Act's "ends of justice" provision, 18 U.S.C. § 3161(h)(7), the Court should act quickly to preserve the integrity of these proceedings and avoid further delay.

## VII.    CONCLUSION AND PRAYER FOR RELIEF

The NPA's unprecedented attempt to contract around Rule 48(a) represents a fundamental threat to the integrity of our criminal justice system. By entering into a binding agreement not to prosecute before this Court has had an opportunity to review the proposed dismissal, the Government has effectively usurped judicial authority and denied the victims' families their rights under the CVRA.

**This case is about more than just Boeing's criminal liability—it is about whether our system of justice can function when the actions (i.e. execution of an improper NPA) of one branch of government attempts to circumvent the constitutional role of another. The appointment of a special prosecutor is necessary not only to ensure accountability for the 346 people who died in the Boeing 737 MAX crashes, but also to preserve the rule of law itself.**

Only the immediate appointment of a special prosecutor can restore integrity to these proceedings and ensure that justice—rather than politics—guides the resolution of this matter. The

victims' families deserve no less, and the American people deserve a criminal justice system that operates according to law, not political expedience.

WHEREFORE, the undersigned victims' families respectfully request that this Honorable Court:

1. **Grant this Motion** and immediately appoint a special prosecutor to handle the prosecution of The Boeing Company in this matter;

2. **Declare void as against public policy** the no-further-prosecution provision contained in Paragraph 22 of the Non-Prosecution Agreement between the Government and Boeing;

3. **Deny the Government's Motion to Dismiss** the Criminal Information;

4. **Order the special prosecutor** to proceed with prosecution of the charges contained in the Criminal Information in accordance with applicable law and the interests of justice; and

5. **Grant such other and further relief** as this Court deems just and proper.

Dated: June 18, 2025                           Respectfully submitted,

_/s/ Darren P. Nicholson_                    _/s/ Paul G. Cassell_
Warren T. Burns                              Sanjiv N. Singh (_admitted pro hac vice_)
Texas Bar No. 24053119                       CA Bar No. 193525
Darren P. Nicholson                          SANJIV N. SINGH, A PLC
Texas Bar No. 24032789                       1700 S. El Camino Real Suite 503
Chase Hilton                                 San Mateo, CA 94402
Texas Bar No. 24100866                       Tel: (650) 389-2255
BURNS CHAREST LLP                            ssingh@sanjivnsingh.com
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
wburns@burnscharest.com
dnicholson@burnscharest.com
chilton@burnscharest.com
                        _Attorneys for Victims' Representatives[4]_

---

[4] _On behalf of Lion Air Victim Family Representatives: Rini Soegiyono, Dayinta Anggana, Helda Aprilia, Serly Oktaviani, Wilson Sandi, Hendrarti Hendraningrum, Dody Widodo, Myrna Juliasari, Merdian Agustin, Adhitya Wirawan, M. Sholekhudin Zuhri, Siska Ong and Wenny Sia Wijaya, Suharto and Rohmiyatun, Sri Umi Anggraini and Permana Anggrimulja._

## CERTIFICATE OF CONFERENCE

On June 18, 2025 the Victims' Representatives conferred about their motion via email to counsel for the Government and Boeing. As of the time of filing the forgoing Motion, the undersigned counsel has not received an email response stating the positions of the Government or Boeing.

*/s/ Sanjiv N. Singh*
Sanjiv N. Singh

## CERTIFICATE OF SERVICE

I certify that on June 18, 2025, the foregoing document was served on the parties to the proceedings via the Court's CM/ECF filing system.

*/s/ Darren P. Nicholson*
Darren P. Nicholson

24