## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cr-00005-O |
| | ) | |
| THE BOEING COMPANY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

## CONSOLIDATED SUR-REPLY AND REPLY BY OBJECTING VICTIMS' FAMILES IN OPPOSITION TO THE PENDING MOTION TO DISMISS AND IN SUPPORT OF APPOINTING A SPECIAL PROSECUTOR AT THE APPROPRIATE TIME

Warren T. Burns
Texas Bar No. 24053119
Darren P. Nicholson
Texas Bar No. 24032789
Chase Hilton
Texas Bar No. 24100866
BURNS CHAREST LLP
wburns@burnscharest.com
dnicholson@burnscharest.com
chilton@burnscharest.com

Charles S. Siegel
Waters & Kraus LLP
siegel@waterskraus.com

Sanjiv N. Singh
Sanjiv N. Singh, A Professional Law Corp
ssingh@sanjivnsingh.com

Filippo Marchino
The X-Law Group PC
fm@xlawx.com

Paul G. Cassell (Utah Bar No. 06078)
(Counsel of Record)
Utah Appellate Project
S.J. QUINNEY COLLEGE OF LAW
University of Utah
cassellp@law.utah.edu
(no institutional endorsement implied)

Robert A. Clifford
Tracy A. Brammeier
CLIFFORD LAW OFFICES P.C.
rac@cliffordlaw.com
tab@cliffordlaw.com

Erin R. Applebaum
KREINDLER & KREINDLER LLP
eapplebaum@kreindler.com

*Attorneys for Victims' Families*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ III

ARGUMENT ........................................................................................................................ 2

I.  The Court Should Deny the Motion to Dismiss Because the Parties Have Maneuvered to Contract Around Rule 48(a)'s Judicial Review Provision. ......................................... 2

    A. The NPA's No-Further-Prosecution Provision Is Contrary to the Public Interest Because It Preempts the Court's Decision on Whether to Approve the Dismissal Motion. .............................................................................................................. 2

    B. The Government Violated the Families' CVRA Rights by Failing to Confer About the No-Further-Prosecution Provision. ...................................................... 7

II. The Court Should Timely Appoint a Special Prosecutor to Move the Prosecution Forward. ..... 9

III. The Court Should Deny The Motion To Dismiss Because The Accompanying NPA Is Unenforceable Due To The Expired Statute Of Limitations. ................................. 16

IV. The Court Should Also Deny The Motion To Dismiss For The Other Reasons Provided By The Objecting Victims' Families. ......................................................... 19

CONCLUSION ................................................................................................................... 20

CERTIFICATE OF SERVICE ......................................................................................... 22

## TABLE OF AUTHORITIES

Cases

*Chardon v. Fumero Soto*, 462 U.S. 650, 652 n.1 (1983).................................................................. 16

*Holguin-Hernandez v. United States*, 589 U.S. 169, 173 (2020)................................................. 13

*In re Ryan*, 88 F.4th 614, 624-25 (5th Cir. 2023) ......................................................................... 5

*In re Ryan*, 88 F.4th 614, 625 (5th Cir. 2023) ...............................................................4, 6, 11, 14

*In re Ryan*, 88 F.4th 614, 625 n.9 (5th Cir. 2023) ....................................................................... 3

*In re Ryan*, 88 F.4th 614, 626 (5th Cir. 2023) ..................................................................... 7, 9, 15

*In re Ryan*, 88 F.4th 614, 628 (5th Cir. 2023) ........................................................................... 10

*In re Ryan*, 88 F.4th 614, 628 n.12 (5th Cir. 2023) ..................................................................... 2

*In re Ryan*, 88 F.4th 614, 629 (5th Cir. 2023) ........................................................................... 15

*ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978) ....................................... 14

*Trump v. United States*, 603 U.S. 593, 621 (2024) .......................................................................11

*United States v. Abreu*, 747 F. Supp. 493, 502 (N.D. Ind. 1990) .................................................. 3

*United States v. Appellant 1*, 56 F.4th 385, 390 (5th Cir. 2022) ................................................ 18

*United States v. Cowan*, 396 F. Supp. 803, 804 (N.D. Tex. 1974)................................................ 2

*United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975)........................................................... 2, 12

*United States v. Cowan*, 524 F.2d 504, 511 (5th Cir. 1975)...................................................... 13

*United States v. Cowan*, 524 F.2d 504, 514 (5th Cir. 1975)........................................................ 6

*United States v. Cox*, 342 F.2d 167, 172 (5th Cir.), *cert. denied*, 381 U.S. 934 (1965)............... 12

*United States v. Davis*,  285 F.2d 378, 385 (5th Cir. 2002)........................................................11

*United States v. Davis*, 285 F.2d 378 (5th Cir. 2002)................................................................11

*United States v. Davis*, 285 F.3d 378, 383 (5th Cir. 2002)........................................................ 12

*United States v. Davis*, 285 F.3d 378, 383 n.3 (5th Cir. 2023).................................................... 12

*United States v. Hamm*, 659 F.2d 624, 629 (5th Cir. 1981) ........................................................ 6

*United States v. Hamm*, 659 F.2d 624, 630 (5th Cir. 1981) ........................................................ 6

*United States v. Lytle,* 658 F. Supp. 1321, 1324–25 (N.D. Ill. 1987).......................................... 17

*United States v. Nixon*, 418 U.S. 683, 693 (1974) .......................................................................11

*United States v. Rafoi*, 60 F.4th 982, 1001 (5th Cir. 2023) ........................................................ 18

*United States v. Schmick,* 904 F.2d 936, 940 (5th Cir. 1990)...................................................... 17

*United States v. Webster*, 127 F.4th 318, 322 (11th Cir. 2025) .................................................... 16

*United States v. Woody*, 2 F.2d 262, 262 (D. Mont. 1924)........................................................... 7

*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796, 801-02 (1987) ................ 12

*Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 793 (1987) ........................... 13

<u>Statutes</u>

18 U.S.C. § 3282 ...................................................................................................................... 16

18 U.S.C. § 3288 ...................................................................................................................... 17

18 U.S.C. § 3771(a)(5) ............................................................................................................... 8

18 U.S.C. § 3771(a)(8) ............................................................................................................... 8

18 U.S.C. § 3771(c)(5) ............................................................................................................. 20

18 U.S.C. § 3771(d)(6) ............................................................................................................. 10

28 U.S.C. § 1651(a) .................................................................................................................. 13

<u>Other Authorities</u>

Paul G. Cassell, *The Crime Victims' Rights Movement: Historical Foundations, Modern Ascendancy, and Future Aspirations*, 56 PAC. L. REV. 387, 404-05 (2025) ........................... 10

Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court"?*, 73 STAN L. REV. ONLINE 28 (2020) .......................................................................................................... 2

<u>Rules</u>

Fed. R. Crim. P. 48(a) ....................................................................................................... 1, 2, 11

<u>Treatises</u>

RESTATEMENT (SECOND) OF CONTRACTS § 178 .......................................................................... 15

<u>Constitutional Provisions</u>

U.S. Const., art. II, § 1 ............................................................................................................. 10

U.S. Const., art. II, § 2 ............................................................................................................. 10

**CONSOLIDATED SUR-REPLY AND REPLY BY OBJECTING VICTIMS' FAMILES IN OPPOSITION TO THE PENDING MOTION TO DISMISS AND IN SUPPORT OF APPOINTING A SPECIAL PROSECUTOR AT THE APPROPRIATE TIME**

As previously permitted by this Court (ECF No. 337), counsel for Naoise Connolly Ryan et al. and other victims' families (the "objecting victims' families," listed in Ex. 1) file this single, consolidated sur-reply in opposition to the Government's pending motion to dismiss (ECF No. 312) and reply in support of their motion for appointment of a special prosecutor at the appropriate time (ECF No. 321, joined by ECF Nos. 318 & 322).

Under Fed. R. Crim. P. 48(a), this Court must decide whether or not to approve the Government's pending motion to dismiss. In its briefing, the Government now admits that it has employed an unprecedented maneuver to make the Court's decision irrelevant. The Government reveals that "it will not move forward with this case even if this Court denie[s] the Rule 48(a) motion …." ECF 334 ("Gov't MTD Reply") at 8. If the Court approves the Government's radical ploy, the effect will be to gut Rule 48(a). Moreover, because the Government concealed its intent to implement this extraordinary plan while supposedly "conferring" with the victims' families, the Government has violated the CVRA. The Court should deny the pending motion to dismiss for these reasons and, thereafter, take appropriate steps to see this case through to an appropriate conclusion, by appointing a special prosecutor and voiding the no-further-prosecution provision.

The Court should also deny the motion to dismiss because the related non-prosecution agreement (NPA) hinges on the Government's ability to refile the pending conspiracy charge against Boeing. But that enforcement mechanism is illusory: the applicable statute of limitations has run, barring the possibility of refiling. The Government's request to dismiss the charge ostensibly "without prejudice" is a sham—and the Government violated the CVRA by failing to disclose this critical fact to the families.

1

**ARGUMENT**

I.   **The Court Should Deny the Motion to Dismiss Because the Parties Have Maneuvered to Contract Around Rule 48(a)'s Judicial Review Provision.**

   A.   **The NPA's No-Further-Prosecution Provision Is Contrary to the Public Interest Because It Preempts the Court's Decision on Whether to Approve the Dismissal Motion.**

At the center of this case is Rule 48(a)'s judicial review provision, which allows a prosecutor to dismiss a previously filed criminal charge only with "leave of court." *See* Fed. R. Crim. P. 48(a). As the objecting victims' families have explained, this rule was adopted by the Supreme Court in 1944 and tracks the law in most states by giving "courts a responsible role in the dismissal of a pending criminal proceeding." *See, e.g.*, ECF No. 318 ("Cassell Br.") at 6 (citing *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975)). The "principal object of Rule 48(a)'s 'leave of court' requirement was … to guard against dubious dismissals of criminal cases that would benefit powerful and well-connected defendants." Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court"?*, 73 Stan L. Rev. Online 28 (2020) (internal quotation omitted), cited favorably in *In re Ryan*, 88 F.4th 614, 628 n.12 (5th Cir. 2023).

For more than eighty years, Rule 48(a) has been functioned through a recognized *modus vivendi*. Prosecutors could move to dismiss a charge, but district courts retained the authority to review—and, in rare cases, reject—the proposed dismissal. Then prosecutors would take the court's decision on the motion into account before making their own final decision about whether to dismiss the charges. *See* Cassell Br. at 14 (discussing, e.g., *United States v. Cowan*, 396 F. Supp. 803, 804 (N.D. Tex. 1974) (after a district court denied a Rule 48(a) motion to dismiss, the prosecutor filed a notice of intention not to prosecute six days later)). The rule thus provided for judicial review of prosecutors' dismissal motions so that "[t]he public and crime victims, not to mention the government and defendants, necessarily and correctly see accountability with Article

2

III from start to finish." *Ryan*, 88 F.4th at 625 n.9. Indeed, any other approach would sap the rule of meaning, contrary to the well-settled interpretive principle that legal provisions should not be read to be ineffective. *See United States v. Abreu*, 747 F. Supp. 493, 502 (N.D. Ind. 1990) ("[r]ecommendations by the prosecutor that charges be dismissed are not conclusive upon the court, otherwise there would be no purpose to Rule 48(a), which requires leave of court for the dismissal of an indictment").

The Government and Boeing, however, are attempting an unprecedented maneuver of contracting around any denial of the dismissal motion by the Court. The parties have already jointly agreed to a no-further-prosecution provision barring the Government from moving forward with the case. *See* Cassell Br. at 6-21 (discussing NPA, ¶ 22). In their earlier briefs, the objecting families repeatedly emphasized that this approach was "unprecedented." *See id.* at 2, 6, 12, 19, 20 (calling the provision "unprecedented"); *see also id.* at 11 n.7 (explaining that counsel's efforts to find an NPA containing the "no-further-prosecution" language were unsuccessful and that "[i]f examples exist, the Government can, of course, provide them"); *accord* ECF No. 321 ("Singh Br.") at 2, 5, 7, 8, 22 (calling the provision "unprecedented"). In response, the Government says nothing, implicitly conceding that this is an unprecedented ploy. And Boeing craftily changes the topic. Boeing deflects by arguing that a decision not to prosecute "is at the core of every NPA"—ignoring the unique timing of the decision here, which effectively circumvents Rule 48(a)'s judicial review provision. Make no mistake: although the parties are unwilling to admit the truth, this no-further-prosecution maneuver is unprecedented. *See generally* Cassell Dec. at ¶ 54 ("Based on my extensive knowledge of the federal criminal justice system … it was a clear and substantial deviation from normal criminal justice processes for the Justice Department to enter into a binding

3

non-prosecution agreement with a defendant in a case involving a pending criminal charge before the Court ruled on a motion to dismiss that charge under Rule 48(a).").[1]

This unprecedented effort to contract around Rule 48(a) violates the "settled sequence of federal courts' authority to resolve criminal prosecutions submitted to them"—a sequence that must be "undiminished by[] contractual agreements between the government and defendants." *Ryan*, 88 F.4th at 625. Any contractual agreements, such as NPAs, "derogate neither court authority nor statutory rights," including rights conferred "in the CVRA." *Id.* Here, the Government (with Boeing's connivance) has effectively sought to arrogate to itself the Court's decision of whether to dismiss the prosecution. Whatever else Rule 48(a) might mean, it cannot mean that prosecutors are free to circumvent the normal judicial review process.

If the Court approves the parties' unprecedented approach, it will no doubt "become the blueprint for all future dismissal motions in federal criminal prosecutions." Cassell Br. at 12 (citing Cassell Dec. at ¶¶ 43-57). On this point, the parties' responses are alarming. Rather than cite any unusual circumstances justifying departing from standard practice, the Government digs in and calls the no-further-prosecution provision "necessary and appropriate." Gov't MTD Reply at 7.

The Government argues that the provision is "necessary" because it "embodies the bargain" of the Government's decision not to further prosecute in exchange for concessions from Boeing. *Id.* at 7. But the Government's argument begs the question of why it departed from the traditional approach it has used for more than eighty years—i.e., openly presenting its "intention to request" from the Court (*In re Ryan*, 88 F.4th 614, 625 (5th Cir. 2023)) a dismissal in exchange for commitments from the defendant. The *timing* of the Government's commitment not to further

---

[1] The Cassell Declaration is undisputed on this point. *Cf.* ECF No. 312-2, Tonolli Dec. (not disputing that executing a no-further-prosecution provision in a pending case is unprecedented).

prosecute Boeing—even before the Court has had the chance to rule—is truly extraordinary. The Government easily could have made its dismissal motion contingent on Court approval. But it did the opposite, assuming that the dismissal was final before court action. *See* NPA, ¶ 3 (the Government has "determined that the appropriate resolution of this case is for the Offices to dismiss the Information ….").

The Government argues that the no-further-prosecution provision is "appropriate" because "the Constitution vests the Executive Branch with the authority to decide whether to proceed with a prosecution." Gov't MTD Reply at 7. But as the Fifth Circuit explained in this case, the Government "exercised its near plenary charging authority when it brought a single charge [against Boeing] by felony information, instead of by, for example, contractual agreement declining prosecution altogether, so staying outside the criminal justice system and courts entirely." 88 F.4th at 624-25. "Having submitted a prosecution to the courts for resolution," *id.* at 625, the Government (and Boeing) cannot complain when the Court reviews the proposed dismissal under Rule 48(a).

On these unique facts, the Court should reject the motion to dismiss based solely on the preemptive timing of the NPA's no-further-prosecution provision. Accordingly, to deny the motion to dismiss, the Court need not investigate such things as "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." Boeing MTD Reply at 10 (internal quotation omitted). Instead, the Court could just observe that this is the first case in modern American history where the parties have agreed that the prosecution of an *already-filed* criminal charge will stop, even before the Court has ruled on the dismissal motion.

To be sure, the Government and a criminal defendant may reach a non-prosecution arrangement between themselves before charges are ever filed—the standard way in which an NPA unfolds. As the Fifth Circuit explained, "An NPA is just that: no prosecution commences in court. Courts are uninvolved, so accountability for the (declination) decision not to prosecute lies squarely on the government.… Contrastingly, a criminal prosecution that *is* submitted to courts to resolve, regardless of any party intention in the future to move to dismiss, receives judicial imprimatur .…" *In re Ryan*, 88 F.4th 614, 625 (5th Cir. 2023) . By attempting to preempt the effectiveness of the Court's decision on the dismissal motion, the parties have destroyed the Article III accountability that Rule 48(a) protects. Nor do the parties dispute that the "Government's contractual promise that it will never prosecute Boeing—regardless of what the Court concludes—casts a long shadow over any judicial decision regarding the motion to dismiss." Cassell Br. at 15.

The parties never justify why they decided to execute a binding non-prosecution agreement before the Court had ruled on the motion to dismiss. This unexplained preemption of court action "clearly indicate[s] a 'betrayal of the public interest.'" *United States v. Hamm*, 659 F.2d 624, 629 (5th Cir. 1981) (quoting *Cowan*, 524 F.2d at 514). The Fifth Circuit has offered other illustrations of betrayal of the public interest, including a prosecutor accepting a bribe or disliking a victim. *Hamm*, 659 F.2d at 630. But these examples are "merely illustrative of the kinds of betrayal of the public interest which would warrant denial of a motion to dismiss; there certainly may be other situations in which the prosecutor's motion, motivated by considerations other than the interest of the public, should be denied." *Id.* at 630 n.19.

In this case, Rule 48(a) itself embodies the public interest, providing judicial review to prevent dismissals "savor[ing] altogether too much of some variety of prestige and influence (family, friends, or money) that too often enables their possessors to violate the laws with

impunity." *United States v. Woody*, 2 F.2d 262, 262 (D. Mont. 1924), overturned in Rule 48(a), as recognized in Adv. Comm. Note (1944 Adoption). And the parties' attempt to short-circuit that mandated judicial review constitutes a "betrayal of the public interest." In this very case, the Fifth Circuit held that when evaluating a motion to dismiss, district courts "vigilantly will enforce the public interest, including Congress' command that crime victims are heard and protected." 88 F.4th at 626. To enforce Rule 48(a)—and thereby enforce the public interest—this Court should deny the motion to dismiss.

### B. The Government Violated the Families' CVRA Rights by Failing to Confer About the No-Further-Prosecution Provision.

While the unprecedented no-further-prosecution provision alone warrants denying the Government's motion to dismiss, the Government's failure to confer with the victims' families about this critical provision violated the CVRA. This CVRA violation provides an independent basis for the Court to reject the pending motion. *See* Cassell Br. at 19-21.

The Government never disputes the point made in the opposing families' counsel's declaration that, during the relevant conference call, the families' counsel reasonably understood the Government to be describing an NPA predicated on an initial judicial decision on the motion to dismiss. *See* Cassell Dec. at ¶¶ 47-49. As a result of the Government's premeditated deception, the victims were deprived of any opportunity to confer with the Government about its extraordinary departure from normal practice. *See id.* at ¶¶ 50-57. Specifically, during the May 16, 2025, conference call, the Government described the Court's "legal authority" to deny a dismissal motion:

> We know that if the Department were to decide to do an NPA, many of you would likely oppose an accompanying motion to dismiss. Your lawyers can talk to you about the legal authority a judge has to deny the government's motion to dismiss when the defendant is consenting, as we believe Boeing would do here.

Tr. (May 16, 2025), Ex. 5 to Cassell Br., at 7. The objecting families' legal counsel reasonably understood these remarks as referring to the standard practice of federal prosecutors first allowing a district judge to rule on the motion to dismiss. *See* Cassell Dec. at ¶ 48. Later during the call, counsel asked the Government whether it would "support the victim[s'] families' right to be heard in front of Judge O'Connor at that time [when he was considering the Government's motion to dismiss], so he can at least hear our case on this?" *Id.* at 14, ¶ 49. In response, the Government stated: "Yes, we support the victims' families' right to be heard in front of Judge O'Connor." *Id.* Counsel understood the Government "to be saying that it would support the families' [CVRA] 'right to be heard' by the Court before the Department entered into any binding agreement not to prosecute Boeing. Part of the reason for [this] understanding is that it would make little sense to support the families' right to be heard about whether to dismiss the pending charge if a binding agreement not to prosecute that charge had already been made …." *Id.* at ¶ 49.

Many families would have objected during the call if they had known what the Government was planning to do. *Id.* at ¶ 53. Thus, the Government's deliberate "failure to disclose this provision in advance to the victims' families prevented reasonable conferral on this provision—which is perhaps the single most important provision in the Boeing NPA." *Id.*

The CVRA promises crime victims that they will have "[t]he reasonable right to confer" with prosecutors, 18 U.S.C. § 3771(a)(5), and that they will be "treated with fairness," 18 U.S.C. § 3771(a)(8). Here, the victims' families were deprived of their right to confer about a critical feature of the NPA and were treated unfairly when the Government deployed its unprecedented and deceptive maneuver. This Court must step in to "vigilantly … enforce the public interest, including Congress' command that crime victims are heard and protected." *In re Ryan*, 88 F.4th

614, 626 (5th Cir. 2023) . The Court should deny the motion to dismiss because of these CVRA violations.

## II. The Court Should Timely Appoint a Special Prosecutor to Move the Prosecution Forward.

For the reasons just explained, the Court should deny the motion to dismiss to protect the manifest public interest. But the Government and Boeing nonetheless claim that they can force the Court to grant the motion because, as a matter "constitutional reality," the Court is "powerless" to direct the case to move forward. Gov't MTD Reply at 7-8. If the parties' position were true, then Rule 48(a) would be rendered ineffectual. But the parties are wrong: the Court possesses the power to effectuate its denial of the motion to dismiss, by appointing a limited-purpose special prosecutor and voiding the no-further-prosecution provision.

In attempting to block the Court from effectively reviewing the motion to dismiss, the parties both raise general separation of powers concerns. *See* Gov't MTD Reply at 19-24; Boeing MTD Reply at 5-14. But, as the Government concedes, appointment of a special prosecutor would likely "overcome this component of the constitutional separation of powers." Gov't MTD Reply at 8 n.16. So, the Government (and Boeing) then fall back on two objections to the appointment of such a prosecutor.

First, the parties argue that the objecting families lack "an independent CVRA right to see a special prosecutor appointed." Gov't MTD Reply at 20; *see also* Boeing MTD Reply at 10. But the parties misconstrue the families' argument. The families are not claiming that the CVRA provides them an "independent right" to move for appointment of a special prosecutor. Instead, the families rely on the pre-existing legal landscape, which gives the Judiciary the ability to enforce any denial of a motion to dismiss by appointing a special prosecutor. Thus, just as Rule 48(a) allows the families to urge the Court to deny the motion to dismiss, so too the families can urge

9

the Court to appoint a special prosecutor. *See* Cassell Br. at 16-19; Singh Br. at 10-13. To be sure, "[n]othing in [the CVRA] shall be construed to impair the prosecutorial discretion of the Attorney General ….." 18 U.S.C. § 3771(d)(6). But in exercising their procedural CVRA rights to be heard and treated fairly, the families do not substantively impair prosecutorial discretion; instead, they properly urge the Court to exercise *its* existing power under pre-existing legal principles. And because the families possess a CVRA right "to be treated with fairness," they also possess the right to have the Court consider their arguments under an accurate understanding of the law. *See Ryan*, 88 F.4th at 628 (noting this Court will "assess the public interest according to caselaw … as well as any other circumstances brought to its attention by the victims' families").

The Government's and Boeing's constitutional concerns about a special prosecutor ultimately appear to rest on two general provisions in the Constitution—i.e., article II, sections 1 and 3. Section 1 identifies the "executive power" as "vested" in the President. U.S. Const., art. II, § 1. But the extent to which this provision might allow the Executive to control criminal cases on judicial dockets is unclear. *See generally* Paul G. Cassell, *The Crime Victims' Rights Movement: Historical Foundations, Modern Ascendancy, and Future Aspirations*, 56 Pac. L. Rev. 387, 404-05 (2025) ("the Framers never discussed prosecution in connection with federal executive power at the [Constitutional] Convention"). Moreover, the next section—section 2—contains the Appointments Clause, allowing Congress to vest various appointments in "the Courts of Law." U.S. Const., art. II, § 2. The objecting families have cited congressional enactments, including the Judiciary Act and the All Writs Act, providing authority for appointing a special prosecutor to pursue this case. And the Government concurs that appointing a special prosecutor "would not violate the Appointments Clause ….." Gov't MTD Reply at 25 n.53 (citing Singh Br. at 17-18).

The parties' argument against the constitutionality of a special prosecutor also relies on article II, section 3, which directs that the President "shall take Care that the Laws be faithfully executed …." The Government argues that the Take Care Clause confers on the Executive the "exclusive authority and absolute discretion to decide whether to prosecute a case." Gov't MTD Reply at 22 (citing *United States v. Nixon*, 418 U.S. 683, 693 (1974)). But understood in context, this proposition does not control. The issue here is not whether the Executive should "*prosecute* a case"[2] but rather whether the Court should *dismiss* a case that the Government has already chosen to prosecute and place on the Court's docket. As the Fifth Circuit explained in this very case, the Executive has "submitted a prosecution to the courts for resolution …." *Ryan*, 88 F.4th at 625. Because the Executive has presented the case to the Judiciary, "no separation-of-powers friction exists" when this Court reviews a "government motion to dismiss the prosecution (pursuant to Federal Rule of Criminal Procedure 48(a))." *Id.*

Understanding this case's current procedural posture swiftly distinguishes the primary authority the Government relies upon—*United States v. Davis*, 285 F.2d 378 (5th Cir. 2002), which the Government describes as "the Fifth Circuit's most recent discussion on the appointment of special prosecutors." Gov't MTD Reply at 23. *Davis* is inapposite. *Davis* involved appointing not a special prosecutor to pursue a case but rather an "independent counsel" to *defend* against a prosecution by presenting mitigation evidence at a death penalty sentencing. The Fifth Circuit concluded that appointing a defense attorney violated the defendant's Sixth Amendment right to self-representation. 285 F.2d at 385. The Government also quotes *Davis* as stating that "allowing federal judges to appoint special prosecutors when the government elects not to prosecute would

---

[2] As a result of discretion about whether to bring a case, the President can request criminal investigations, even if some might view them as "shams" or "proposed for an improper purpose." *See Trump v. United States*, 603 U.S. 593, 621 (2024).

contravene *Cox.*" Gov't MTD Reply at 22 (quoting *Davis*, 285 F.3d at 383). But in *Cox*, the Fifth Circuit held that the Judiciary "lacked the power to require the United States Attorney to sign indictments, and thereby dispelled the notion that the district court had the power to compel the executive branch to *initiate* prosecution." *Davis*, 285 F.3d at 383 (emphasis added) (describing the holding in *United States v. Cox*, 342 F.2d 167, 172 (5th Cir.), *cert. denied*, 381 U.S. 934 (1965)). *Cox* specifically validated judicial review of Rule 48 dismissal motions, explaining that "[i]f it were not for the discretionary power given to the United States Attorney to prevent an indictment by withholding his signature, there might be doubt as to the constitutionality of the requirement of Rule 48 for leave of court for a dismissal of a pending prosecution." *Id.* at 172. And *Davis* also specifically distinguished between initiating a prosecution and terminating one already initiated. *See Davis*, 285 F.3d at 383 n.3 (distinguishing *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975), as involving a situation where a district judge was attempting to "effectuate the denial [of a motion to dismiss] by appointing special prosecutors").

If anything, *Davis* appears to recognize that the Judiciary possesses power to appoint special prosecutors in appropriate situations. *Davis* did not hold that such appointments were forbidden, but rather that "the exacting appellate scrutiny applied to judicial appointment of special prosecutors must also be applied to the instant case." *Davis*, 285 F.3d at 383.

The Government ultimately concedes that *Davis* and other cases recognize the possibility of the "judicial appointment of special prosecutors." The Government is forced to acknowledge what it describes as "a narrow exception that allows the Judiciary to appoint a private attorney to prosecute criminal contempt of court where the Executive Branch declines to do so." Gov't MTD Reply at 22 (citing *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796, 801-02 (1987)). Then, the Government simply declares that, "[o]utside that exception, invoking inherent

judicial power to appoint special prosecutors violates the constitutional separation of powers." *Id.* But the Government's *ipse dixi*t fails to explain why that "exception" to a supposed general constitutional requirement is artificially cabined to criminal contempt cases. As the families explained in their earlier briefing, the animating principle governing such appointments is not the type of case involved (e.g., a contempt case) but rather the Judiciary's "inherent authority" to protect its own institutional power. *See* Cassell Br. at 14 (discussing *Young*, 481 U.S. at 793); Singh Br. at 10-13 (same). Rule 48(a) gives the Court the authority to deny a Government motion to dismiss—and neither the Government nor Boeing claims that this long-standing rule is unconstitutional. And because the Court indisputably possesses the power to deny the pending motion to dismiss, it must also possess the power to effectuate that ruling.[3] And the parties' theory is unable to explain situations where courts have appointed special counsel to defend criminal cases, even after the Government declines to do so. *See, e.g., Holguin-Hernandez v. United States*, 589 U.S. 169, 173 (2020) (noting appointment of an amicus curiae to defend a Fifth Circuit opinion upholding a criminal conviction later abandoned by the Government).

Moreover, this Court possesses not only inherent judicial authority to appoint a special prosecutor but also statutory authority under the Judiciary Act—and particularly under the All Writs Act, 28 U.S.C. § 1651(a). Such an appointment would be necessary and appropriate "in aid of" the Court's jurisdiction. *See* Cassell Br. at 18-19; Singh Br. at 19. The parties do not dispute that this Court currently possesses jurisdiction over this case. Yet the Government remarkably

---

[3] Both the Government and Boeing offer a quotation from *United States v. Cowan*, that "although the court is authorized to deny the motion to dismiss in the public interest, it is nevertheless constitutionally powerless to compel the government to proceed." 524 F.2d at 511. This quotation, however, was simply dicta describing Judge Weinfeld's "postulat[ing]" certain problems that might occur if a motion to dismiss were denied. *Id. Cowan* itself later stated that the purpose of judicial review under Rule 48(a) is to "modify and condition the absolute power of the Executive" and that the rule gives the Judiciary "a power to check power." *Id.* at 513.

asserts that the proposed dismissal "does not threaten this Court's subject-matter jurisdiction." Gov't MTD Reply at 24. This assertion disregards the fact that dismissing the case would *end* this Court's subject-matter jurisdiction. To effectively deny dismissal, the Court must appoint a limited-purpose special prosecutor for this specific case. This narrow action is "necessary to enable the court to try the issues to final judgment," as the Government's own authorities permit. *See, e.g.* Gov't Br. at 24 (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)).

By entering into a binding contract blocking further prosecution of Boeing—even before this Court had ruled on the motion to dismiss—the parties deliberately chose to create what the Fifth Circuit has aptly identified as "separation-of-powers friction." *Ryan*, 88 F.4th at 625. In blocking the parties' scheme, this Court would not be second guessing the Government's "considered judgment about how best to resolve a complex and long-running matter." Gov't MTD Reply at 9. Instead, it would simply be demonstrating that it is not "powerless" in the face of the parties' nefarious stratagem to eviscerate a long-standing rule of criminal procedure.

For all these reasons, the Court should deny the motion to dismiss and then appoint a limited-purpose special prosecutor to pursue this particular (and previously filed) case to its natural conclusion at trial. The objecting victims' families all agree with this approach, with the only difference being timing: one group (represented by Mr. Singh et al.) asks for the appointment immediately while the other group (represented by Mr. Cassell et al.) suggests that the Court first offer the Government an opportunity to pursue the prosecution. Either approach works.

The Court should also void the no-further-prosecution provision as contrary to public policy—i.e., the public policy embodied in Rule 48(a) providing for judicial review of dismissal motions. *See* Cassell Br. at 13-14. The Government's only response is that it assumed it could agree to that provision before any judicial review because the Government expected the Court to later

14

approve. *See* Gov't MTD Reply at 7. But this response brings to mind the demand from *Alice in Wonderland's* Queen of Hearts, who asked for "verdict first, trial later." Predicting a favorable outcome from a procedure does not justify short-circuiting that procedure. Indeed, given that the Government is arguing that "constitutional reality" renders the Court "powerless" to do anything other than validate its previous dismissal decision (*see* Gov't MTD Reply at 7-8), any Court approval now will be generally interpreted as mere judicial acquiescence. The controlling law is that "the judicial role stays present and constant throughout" the case. *Ryan*, 88 F.4th 626. Because the Government is attempting to block that judicial role through the no-further-prosecution provision, the Court should void it.

In response to the void-against-public-policy argument, Boeing does not attempt to show that the provision is consistent with the public policy. Instead, Boeing asserts that the Court lacks authority to void the provision. *See* Boeing MTD Reply at 7-8. But Boeing ignores this Court's mandate to "vigilantly … enforce the public interest." *Ryan*, 88 F.4th at 626. Indeed, the Court could have voided the entire DPA earlier. *See Ryan*, 88 F.4th at 629 (Clement, J., concurring) (explaining "our decision should not be read as holding that the district court was *prohibited* from setting aside the DPA at an earlier stage of these proceedings—including upon motion from the victims' families—after finding that the victims' CVRA rights had been violated"; citing Restatement (Second) of Contracts § 178 (providing that contracts entered in violation of public policy are void and unenforceable)). The Court could—and should—exercise that same voiding power now in the face of an unprecedented ploy agreed to by Boeing.

Boeing is on stronger footing in arguing that this provision was "*the* principal consideration received by Boeing in entering the NPA …." Boeing MTD Reply at 7 (emphasis in original). But if this is true, it only demonstrates that the *entire* NPA must be invalidated under standard contract

principles, because recission of paragraph 22 alone is impossible. Accordingly, if the entire NPA is invalid, then the logical next steps are for the Court to grant the motion to dismiss and order the Government to proceed to trial. The opposing families endorse that approach as well.

### III.   The Court Should Deny the Motion to Dismiss Because the Accompanying NPA is Unenforceable Due to the Expired Statute of Limitations.

The Court should also deny the motion to dismiss because, due to the statute of limitations lapsing, the NPA's enforcement mechanism of refiling the conspiracy charge against Boeing is illusory. *See* Cassell Br. 21-25

The Government's response agrees with the objecting families about how the statute of limitations generally operates, with one exception: the Government claims that when it filed the Criminal Information against Boeing on January 7, 2021, it stopped the clock on the statute of limitations. Thus, the Government contends, today the "amount of time left on the clock—nearly three years—is longer than the two-year term of the NPA." Gov't MTD Reply at 11.

The Government is wrong. Its filing of a criminal charge did not stop the clock with respect to a later refiling of that charge. Certainly nothing in the text of the applicable statute supports the Government's position. The relevant statute—§ 3282—allows a prosecution only if "the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282. The Government misconstrues certain cases, which state that, after an "information is instituted[,] … the statute of limitations is *tolled* for the charges the information alleges …." *United States v. Webster*, 127 F.4th 318, 322 (11th Cir. 2025) (emphasis added). But the Government fails to acknowledge that the term "toll" can have different meanings, including both a stop-the-clock meaning and a suspend-while-a-condition-is-in-effect meaning. *See Chardon v. Fumero Soto*, 462 U.S. 650, 652 n.1 (1983) (offering different meanings for "tolling" and "tolling effect"). The statute's text provides for a suspension while a condition is in

effect. The statute requires a charge to be "instituted" within the five-year limitations period. So long as that condition of a timely charge is in effect, the statute does not lapse. But as the text provides, once a timely charge is no longer "instituted," then the five-year limit applies.

The cases that the Government cites involve fact patterns in which the Government has instituted a charge, thereby preventing the statute from lapsing while that condition—a pending criminal charge—remained in effect. *See, e.g., United States v. Schmick,* 904 F.2d 936, 940 (5th Cir. 1990). But such cases are inapplicable here, where the Government proposes to simply dismiss the pending charge against Boeing. After the dismissal, the Government can only seek a new indictment if it complies with the five-year statute of limitations. But the Government has run out of time to do that.

This reading is confirmed by the "grace period" statute, permitting the Government to re-file a charge within six months after a felony charge "is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired." 18 U.S.C. § 3288. As one district court sagely explained in rejecting the Government's stop-the-clock "tolling" theory:

> If the government were right in contending that the return of every indictment automatically "tolls" the statute of limitations in the sense of suspending its operation during the entire pendency of that indictment, there could *never* be a dismissal "after the period prescribed by the applicable statute of limitations has expired" (the Section 3288 language). That would be so because every timely indictment is necessarily returned (by definition) before the statute of limitations has run, and under the government's theory the claimed "tolling" effect of the indictment itself would prevent any further running of the statute—consequently rendering any dismissal (again by definition) one that must occur before rather than after the limitations period has expired.
>  …
>
> This Court cannot ascribe to Congress the enactment of a totally useless statute, which is what Section 3288 would be under the government's version. Hence the very existence of Section 3288 in the statute books gives the lie to the government's present position.

*United States v. Lytle,* 658 F. Supp. 1321, 1324–25 (N.D. Ill. 1987).

The Government also argues that it has succeeded in extending the statute of limitations through its contract with Boeing. The Government cites an NPA provision providing that "[a]ny such prosecution relating to the conduct described in the attached Statement of Facts … *that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement* may be commenced against the Company, notwithstanding the expiration of the statute of limitations …." NPA, ¶ 16. But, of course, this provision begs the question of what prosecution *is* time-barred by the agreement. Because (as the Government seemingly concedes) the five-year statute has lapsed as to the conspiracy charge, all conduct connected with that charge is now "time-barred by the applicable statute of limitations …." And while the NPA's plain language is enough to resolve the issue, any ambiguity is construed against the Government, *United States v. Appellant 1*, 56 F.4th 385, 390 (5th Cir. 2022), and statutes of limitations are "to be liberally interpreted in favor of repose." *United States v. Rafoi*, 60 F.4th 982, 1001 (5th Cir. 2023).

So much for the Government's arguments. But what about Boeing? Boeing apparently agrees with the objecting victims' families! Given the opportunity to explain its position, Boeing says … well … nothing. It would have been a simple matter for Boeing to state it agreed with the Government's interpretation. Boeing's deafening silence on the issue essentially confirms the families' position—and suggests a "meeting of the minds" does not exist about the NPA's terms.

Because Boeing cannot be re-prosecuted once the charge against it is dismissed, the Government's motion for a dismissal—ostensibly "without prejudice"—is a sham. And, in addition, the Government violated the families' CVRA rights by failing to tell the families about how the NPA was going to operate. *See* Cassell Br. at 24-25. The truth is that if the Court permits the Government to dismiss the conspiracy charge, the statute of limitations door swings shut—and Boeing escapes accountability. The Government has informed the Court that "the Government's

ability to refile is an important enforcement mechanism in the NPA." Gov't MTD Reply at 12. Without that mechanism, the NPA is toothless. It could not be in the public interest to approve such a defective arrangement, especially when the defect was concealed from the families.

## IV. The Court Should Also Deny the Motion to Dismiss for the Other Reasons Provided by the Objecting Victims' Families.

The objecting victims' families have also advanced other arguments against the motion to dismiss (and the DPA and NPA). *See generally* Cassell Br. at 6-49; Singh Br. at 1-22. While the Government and Boeing have responded to these arguments, the families see nothing compelling in the responses and will stand on their existing briefing—while emphasizing a few points.

In their earlier briefing, the objecting families explained that the Government's Sentencing Guidelines calculations (which derive from the DPA) are demonstrably false and have improperly factored into the supposed "maximum fine" that the parties claim justifies their NPA. *See* Cassell Br. at 32-35. Moreover, the Government has refused to reasonably confer about this important subject, providing evasive non-answers and even declining to state whether it has provided all relevant information to this Court. *Id.* at 35-41. And the net effect of the Government's dodging has been to obscure Boeing's true culpability. *Id.* at 41.

The Government's reply brief does not engage these points, which the families presented in nine pages of detailed briefing. *See id.* at 32-41. Instead, the Government simply asserts, without explanation, that the objecting families' claims are somehow "unsupported." Gov't MTD Reply at 15. And the Government offers no defense of its failure to reasonably confer about these subjects.

Boeing does not address these topics at all.

On this record, it could not be in the public interest for the Court to approve the motion to dismiss, bringing these important criminal proceedings to an abrupt end with many questions left unanswered. The Court should instead deny the motion to dismiss and direct the Government to

reasonably confer with the families about Boeing's true culpability—culpability that would necessarily need to be considered as part of the criminal penalty that Boeing must pay.

The Court should also now declare the DPA to be invalid, because the DPA has clearly factored into the current resolution of the case. The Government claims that the NPA is an "independent resolution" of the case. Gov't MTD Reply at 15. But the DPA provided the basis for the Guidelines calculations that now underpin the proposed NPA penalties. Only by setting aside the illegally negotiated DPA can the Court assure that this case is properly resolved.

## CONCLUSION

For the foregoing reasons, the objecting families respectfully request that the Court hold a hearing where the victims' families and their counsel can be heard in opposition to the motion to dismiss. Thereafter, the Court should declare the DPA invalidate for all the reasons explained in previous briefing, including previously found CVRA violations. The Court should also exercise its authority under Rule 48(a) and deny the Government's motion to dismiss for the reasons explained by the objecting families. The Court should then appoint a limited-purpose special prosecutor to move forward with the case and also void the no-further-prosecution-provision. The Court should also enter an appropriate order under the Speedy Trial Act to exclude the lapse of time while it considered the motion to dismiss and related follow-on proceedings.[4]

---

[4] If the Court nonetheless determines it will reject the objecting families' arguments and grant the motion to dismiss, the families respectfully move for the Court to stay its decision for five business days to give the families an opportunity to read the Court's decision and to consider whether to seek appellate review. *See* 18 U.S.C. § 3771(c)(5) (authorizing a stay for five days to permit CVRA mandamus petitions). If the Court were to simply reject the families' arguments and grant the motion to dismiss without entering a short stay, the effect could be to complicate any appellate review by the Fifth Circuit, given the lapsing of the statute of limitations and other issues discussed in the briefing.

Dated: July 18, 2025                           Respectfully submitted,

*/s/ Darren P. Nicholson*                        */s/ Paul G. Cassell*
Warren T. Burns                                  Paul G. Cassell (Utah Bar No. 06078)
Texas Bar No. 24053119                           (Counsel of Record)
Darren P. Nicholson                              Utah Appellate Project
Texas Bar No. 24032789                           S.J. QUINNEY COLLEGE OF LAW
Chase Hilton                                     University of Utah
Texas Bar No. 24100866                           801-585-5202
BURNS CHAREST LLP                                cassellp@law.utah.edu
900 Jackson Street, Suite 500                    (no institutional endorsement implied)
Dallas, Texas 75202
Telephone: (469) 904-4550                        Robert A. Clifford
wburns@burnscharest.com                          Tracy A. Brammeier
dnicholson@burnscharest.com                      CLIFFORD LAW OFFICES PC
chilton@burnscharest.com                         rac@cliffordlaw.com
                                                 tab@cliffordlaw.com

                                                 Erin R. Applebaum
                                                 KREINDLER & KREINDLER LLP
                                                 eapplebaum@kreindler.com

                                                 Sanjiv N Singh
                                                 Sanjiv N. Singh, A Professional Law Corp
                                                 1700 S El Camino Real
                                                 Suite 503
                                                 San Mateo, CA 94402
                                                 415-816-5548
                                                 ssingh@sanjivnsingh.com

                                                 Filippo Marchino
                                                 The X-Law Group PC
                                                 625 Fair Oaks Avenue, Suite 390
                                                 South Pasadena, CA 91030
                                                 213-599-3380
                                                 fm@xlawx.com

                                                 Charles S Siegel
                                                 Waters & Kraus LLP
                                                 3141 Hood Street, Suite 700
                                                 Dallas, TX 75219
                                                 214-357-6244
                                                 siegel@waterskraus.com

*Attorneys for Victims' Families*

21

## CERTIFICATE OF SERVICE

I certify that on July 18, 2025, the foregoing document was served on the parties to the proceedings via the Court's CM/ECF filing system.

*/s/ Darren P. Nicholson*
Darren P. Nicholson

**Exhibit 1 – List of Objecting Families Filing the Reply**

As permitted by the Court, the accompanying reply is filed by three groups of victims' families, represented by three groups of attorneys: (1) Victims' families represented by Paul G. Cassell et al., specifically Ms. Naoise Connolly Ryan, as well as Emily Chelangat Babu and Joshua Mwazo Babu, Catherine Berthet, Huguette Debets, Luca Dieci, Bayihe Demissie, Zipporah Kuria, Javier de Luis, Nadia Milleron and Michael Stumo, Chris Moore, Paul Njoroge, Yuke Meiske Pelealu, and John Karanja Quindos ("the Ryan et al. group"); (2) victims' families represented by Sanjiv N. Singh, specifically Rini Soegiyono, Dayinta Anggana, Helda Aprilia, Serly Oktaviani, Wilson Sandi, Hendrarti Hendraningrum, Dody Widodo, Myrna Juliasari, Merdian Agustin, Adhitya Wirawan, M. Sholekhudin Zuhri, Siska Ong and Wenny Sia Wijaya, Suharto and Rohmiyatun, Sri Umi Anggraini. and Permana Anggrimulja (the "Soegiyono group"); and (3) a victims' family represented by Filippo Marchino and Charles S. Siegle, specifically Linda Manfredi ("the Manfredi family").